MAY 9, 1804.

# McIlvain *et al. v.* Holmes *et al.*

*Upon an appeal from a judgment of the Lexington District Court.*

1. The managers of a lottery who were authorized to sell tickets and take bond and surety therefor, are not personally bound for the amount of the bonds until they shall have received the money on them.

2. An act of the legislature which authorizes proceedings against trustees by motion upon an undertaking entered into before the passage of the act, and when no such proceeding was authorized, is unconstitutional.

This case depends upon two acts of assembly, the one passed in the year 1796, entitled " an act to amend and reduce into one the several acts regulating the town of Lexington and for other purposes ;" and the other in the year 1800, entitled " an act to appoint commissioners to settle the account of the managers and trustees of the Lexington chances of insurances." From the first of these acts, and twelfth, thirteenth, and fourteenth sections, it appears that the appellants formed a scheme of chances of insurance on the Lexington lodge lottery, in order to raise a sum of money for paving and repairing the streets, and building bridges in Lexington, and bound themselves to pay to the holders of such chances such prizes as the holders of tickets of the same numbers should be entitled by virtue of the said lottery. It also appears that the said chances were drawn, and, from anything in the record, that the prizes have been paid. But from the last recited act, the proceeds have not been applied to the accomplishment of the objects intended.

The first question which presents itself is, what had the managers of the chances of insurance undertaken and were bound to perform by the scheme? To decide which, it may not be improper to premise that this scheme was formed without the sanction of a law ; the managers, therefore, can be considered as trustees only, subject as other trustees to the control of a court of chancery when they abuse the trust confided to them. The managers had made themselves individually liable to pay the amount of all prizes, and as trustees it was their duty to apply the proceeds when received to the objects originally contemplated. The act of 1796 sanctions the scheme, but does not make the managers further or otherwise liable than they were by the original scheme, therefore no legislative injunctions have been violated. The next question is, have the managers performed their duty as trustees? In forming the scheme, the managers were governed by that formed by the lodge lottery, by which bond and security was to be taken from each person who was entrusted with the sale of tickets. By the fourteenth section of the act of 1796, it is enacted that all bonds entered into for the sale of chances of insurance shall be binding on the obligor or obligors. The taking of these bonds, as well as the other parts of the scheme, was legalized, and therefore it is a fair

conclusion that the managers were not bound for the amount of any bond or bonds taken for the sale of tickets until that amount was received by them.   It does not appear to what amount bonds were taken, or that any steps have been pursued to collect the sums due on the bonds; this delay is accounted for by the bonds having been taken in the name of the trustees of the town of Lexington, and that the managers, although they were trustees at the time the scheme was formed, were no longer so, and therefore conceived that they had no right to meddle further with the bonds. This delay produced the act of 1800, by the first section of which commissioners are appointed to call upon the managers for a settlement and explanation of their transactions in the management and sale of the chances of insurance.   The commissioners are authorized to apply such sums of money as should be found due from the managers to the use and purpose originally intended by the scheme.   And if the managers failed to pay the amount found due from them, the commissioners were authorized to recover a judgment by way of motion.   It was first necessary that a settlement of the accounts of the managers should have taken place, in order to ascertain the amount due from them, in which this court is of opinion they should be allowed a credit for the amount of all bonds taken for the sale of tickets, and for every necessary expense attending the scheme.   But without doing this, the commissioners make their motion and recover judgment for $2,250, which was the sum intended to be raised.   This is conceived to be both illegal and unjust, and the remedy by way of motion given by the act of 1800 is believed to be unconstitutional, inasmuch as it has a retrospective operation, so as to affect the undertaking of the appellants which had been entered into previous to the passage of that act.

Therefore, it is considered by the court, that the judgment aforesaid be reversed, annulled, and set aside, and that the appellants recover of the appellees their costs in this behalf expended, which is ordered to be certified to the circuit court of Fayette county.